IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

LYLE THOMAS BONECUTTER,

        Plaintiff,

V.                                                CIVIL ACTION NO. 3:07-0070

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**<u>MEMORANDUM ORDER</u>**

        In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff filed his application on March 19, 2004, alleging disability as a consequence of chest pain, anxiety, depression, learning/comprehension deficits and numbness/pain in his arms. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

        At the time of the administrative decision, plaintiff was forty-three years of age and had obtained a sixth grade education, partly in special education classes. His past relevant employment

experience consisted of work as a self-employed car mechanic, farm laborer and hospital housekeeper. In his decision, the administrative law judge concluded that plaintiff suffers from coronary artery disease, hypertension, somatoform disorder, and borderline intellectual functioning, impairments which he found to be severe. Concluding that plaintiff had the residual functional capacity for a limited range of medium level work, and relying on Rule 203.25 of the Medical-Vocational Guidelines[1] and the testimony of a vocational expert, the administrative law judge found him not disabled.

From a review of the record, it is apparent that the evidence, though conflicting, provides substantial support for the Commissioner's decision. Plaintiff's medical history is significant for a number of emergency room visits for evaluation of chest pain. These work-ups were negative for any indication of myocardial infarction, and did not reveal the presence of significant cardiac disease. In June 2005, however, plaintiff underwent three-vessel coronary artery bypass grafting, and reports reflect he did well thereafter. He also underwent angioplasty and stent placement in the iliac artery in his left leg due to occlusion of this artery which caused significant pain with walking. This procedure was performed in April 2005. Plaintiff was treated with splints for bilateral carpal tunnel syndrome which resulted in improvement. He also received treatment for hypertension which appeared to be controlled with medication for the most part, and for high blood sugar levels. Mentally, plaintiff was diagnosed with borderline intellectual functioning, somatoform disorder and anxiety. There is no history of mental health treatment other than medication prescribed by the primary care physician.

---

[1] 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 3.

The administrative law judge determined plaintiff had the residual functional capacity for medium level work limited only by a need to perform simple, unskilled work-like activities in a low stress environment.

Plaintiff objects to the administrative law judge's decision on two grounds. First, he claims that he meets the requirements of § 12.05 of the listing[2] based on IQ test scores of verbal 61, performance 69, and full scale 62, which were obtained during an April 13, 2004 consultative psychological evaluation. Considering these scores valid, the examiner had diagnosed mild mental retardation. These scores conflict with two sets of IQ scores obtained when plaintiff was in elementary school, however. On September 25, 1968, when plaintiff was six years old, WISC scores were verbal 96, performance 76 and full scale 85. On December 5, 1974, when plaintiff was in sixth grade, WISC testing produced a verbal score of 94, performance score of 74 and full scale score of 83, similar to the prior scores. It was felt he had a possible learning disability which warranted further testing, but the examiner considered him to have "dual [sic] normal intelligence." A report from the learning disabilities program at plaintiff's school reflects that during sixth grade he was working below age and grade level in all areas. He received instruction from the learning disability specialist three days per week. Another factor noted to have a bearing on his academic achievement was "extremely poor" school attendance.

When the psychologist who evaluated plaintiff in April 2004 was given the earlier IQ test results to review, she wrote that plaintiff's diagnosis would more accurately be learning disability NOS and borderline intellectual functioning. It was her opinion that plaintiff's IQ scores were

---

[2]20 C.F.R. Part 404, Subpart P, Appendix 1.

depressed during her evaluation due to anxiety.[3] The administrative law judge accepted her opinion, and given the absence of a diagnosis of mental retardation, did not evaluate plaintiff's IQ under the provisions of § 12.05.[4]

The listing at § 12.05 defines mental retardation as "significantly subaverage general intellectual functioning" with deficits in adaptive functioning "initially manifested during the developmental period, i.e., the evidence shows or supports onset of the impairment before age 22." In this case, as noted by the Commissioner, plaintiff has not been diagnosed with mild mental retardation, and testing performed prior to age twenty-two clearly did not establish the existence of any degree of mental retardation. The administrative law judge's finding is thus supported by substantial evidence.

Plaintiff also contends that the administrative law judge's residual functional capacity findings are not supported by substantial evidence, particularly as to his physical abilities. He specifically objects to the failure of the administrative law judge to adopt his treating physician's opinion. As the Commissioner notes, the administrative law judge's findings as to mental limitations are taken from the assessment of a state agency psychologist who he notes was the only source to assess any work-related psychological limitations. Clearly, these findings are supported by substantial evidence.

---

[3]This examiner noted that plaintiff had reported anxiety and worry over his heart problems, which his wife confirmed, and he had inability to sleep at night. He indicated he would wake up during the night thinking he was having a heart attack, would shake and sweat and then make his wife get up and sit with him. During the psychological exam, plaintiff was observed to be wringing his hands and sweating, and he displayed an anxious mood.

[4]Both of the state agency psychologists who reviewed the evidence concluded that the 2004 IQ results were invalid.

4

In terms of physical limitations, plaintiff alleges the administrative law judge selectively relied on only two of the treatment notes from Dr. Corn, plaintiff's primary care provider. The first exhibit plaintiff references is Exhibit 24F which includes a number of treatment notes from Dr. Corn, including the comments he appended to the "Routine Abstract Form" he completed for the Disability Determination Section on July 30, 2004. The administrative law judge considered Dr. Corn's comment that plaintiff is "unable to return to former (or likely any) occupation" and declined to give this expression of his opinion significant weight because it pertains to the ultimate decision on disability which, of course, is for the Commissioner to make.[5]

The administrative law judge also reviewed the treatment notes in this exhibit and found they did not support such a conclusion. He did not pick out any reports specifically but noted, accurately, that these reports did indicate both that plaintiff's coronary artery disease was, for the most part, stable, and his hypertension was relatively controlled despite plaintiff's reports of ongoing chest pain, which required only conservative treatment until just before bypass surgery was performed in June 2005. The citation to the June 16, 2005 emergency room report,[6] in which the examining physician relates plaintiff's subjective statements that he had felt good since his bypass surgery, was entirely appropriate, as was the administrative law judge's reliance on this evidence in concluding that plaintiff had experienced improvement since his bypass operation. This was also further evidence that Dr. Corn's statement was lacking in support.

A treating physician's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight only where it is "well-supported by medically acceptable clinical and

---

[5] 20 C.F.R. § 416.927(e)(1).

[6] The administrative law judge mistakenly labeled this as being June 16, 2004.

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record ... ."[7] The administrative law judge's evaluation of Dr. Corn's opinion and decision to give it little weight are consistent with the regulations and supported by the evidence. Finding plaintiff's objections without merit, and the decision denying benefits supported by substantial evidence, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER:   August 5, 2009

/s/ Maurice S. Taylor, Jr.
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7] 20 C.F.R. § 416.927(d)(2); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).